(C. D. 704)

L. MENDELSON CO. *v.* UNITED STATES

United States Customs Court, Second Division

(Decided November 9, 1942)

*Marlow & Hines* for the plaintiff.

*Paul P. Rao*, Assistant Attorney General (*Richard E. FitzGibbon*, special attorney), for the defendant.

Before TILSON and KINCHELOE, Judges

TILSON, Judge: The two suits listed above were filed by the plaintiff seeking to recover certain sums of money claimed to have been

illegally exacted as customs duties upon imported bags. Duty was levied thereon at the rate of 60 per centum under paragraph 1503 of the act of 1930, and the plaintiff claims the same to be properly dutiable at only 50 per centum under paragraph 411 of the same act.

These two suits have been submitted for decision upon the following stipulation:

It is hereby stipulated and agreed by and between counsel for the plaintiff and the Assistant Attorney General, Attorney for the defendant, that the merchandise hereinafter indicated in Schedule A hereto annexed, which was assessed for duty at 60% ad val. under Par. 1503 of the Tariff Act of 1930, which merchandise is marked A on the invoices and checked by examiner A. B. E. (A. Alexander) consists of wood bead bags, which merchandise is identical in all material respects to the merchandise before the court in Abstract 46773 and held by the court to be dutiable at 50% ad val. under Par. 411 of the said Act.

It is further stipulated that the record in Abstract 46773 may be incorporated as part of the record herein. Any further right to amend and the first docket call are hereby waived and the protests herein are submitted on this stipulation, all other claims being abandoned.

The pertinent part of said paragraph 1503, under which classification was made, reads as follows:

* * * fabrics and articles not ornamented with beads, spangles, or bugles, nor embroidered, tamboured, appliquéd, or scalloped, composed wholly or in chief value of beads or spangles (other than imitation pearl beads, beads in imitation of precious or semiprecious stones, and beads in chief value of synthetic resin), 60 per centum ad valorem; * * *.

The paragraph under which the merchandise is claimed to be dutiable reads as follows:

Porch and window blinds, baskets, bags, chair seats, curtains, shades, or screens, any of the foregoing wholly or in chief value of bamboo, wood, straw, papier-mâché, palm leaf, or compositions of wood, not specially provided for, 50 per centum ad valorem.

Since it has been agreed that the merchandise herein is identical in all material respects to the merchandise before the court in Abstract 46773, and the record therein has been admitted in evidence in this case, we shall briefly review the evidence in the case of *Stern* v. *United States*, reported as Abstract 46773. Examiner Alexander testified in that case that the merchandise was bags carried by ladies, used as an ordinary ladies' bag or purse would be used; that they are composed of beads, zipper, and cotton lining, and that the beads are made of wood.

Upon the above record the *Stern* case was submitted, and after the filing of briefs, the case was decided, the court holding the merchandise dutiable under paragraph 411 as bags wholly or in chief value of wood. In the course of its decision the court stated:

There seems to be no disagreement between the parties as to the component material of chief value. Examiner Alexander testified that the beads composing

the bags were made of wood. Inasmuch as the bags were assessed at 60 per centum ad valorem under paragraph 1503 as being

\* \* \* articles \* \* \* composed wholly or in chief value of beads \* \* \* and the said beads being made of wood, we are assuming that the bags are admittedly in chief value of wood. With this constructive concession on behalf of the Government, viz., that the bags are composed in chief value of wooden beads, the only question to be decided here is one of relative specificity.

If we were in accord with the above statement of the court we would unhesitatingly follow its decision reported in Abstract 46773 and hold the instant merchandise dutiable under said paragraph 411. However, for the reasons hereinafter stated, we are not in agreement with the above-quoted holding of this court as reported in Abstract 46773.

In the first place it should be noted that the merchandise was classified as "\* \* \* articles \* \* \* composed wholly or in chief value of beads \* \* \*," and the testimony of examiner Alexander that the beads of which the bags are in chief value are composed of wood is no evidence that the bags are not in fact composed in chief value of beads. There is, therefore, no evidence in the record before us to overcome the presumption of correctness attaching to the classification of the merchandise as articles composed wholly or in chief value of beads.

In his brief filed in the *Stern* case, counsel for the defendant makes the following statement:

It is to be noted that paragraph 1503, in providing for articles composed wholly or in chief value of beads, exempts from that paragraph articles composed in chief value of "imitation pearl beads, beads in imitation of precious or semiprecious stones, and beads in chief value of synthetic resin." Therefore, under the doctrine of *expressio unius est exclusio alterius*, articles composed in chief value of wooden beads are conclusively provided for in the paragraph.

We are in accord with the above-quoted statement. Therefore, the provision in paragraph 1503 covers articles composed wholly or in chief value of beads regardless of the material of which the beads are composed, save those beads specially excepted from the paragraph. Said provision therefore covers articles wholly or in chief value of wooden beads.

Contrary to the view expressed by this court in Abstract 46773, it is our view that the instant merchandise is not covered by paragraph 411 at all, in that it is not composed wholly or in chief value of wood. There is therefore no question of relative specificity between the provision in paragraph 1503 and the provision in paragraph 411. True, the beads of which the bags are composed are wholly or in chief value of wood, but we are not here interested in the component material of the beads, so long as they are not imitation pearl beads, beads in imitation of precious or semiprecious stones, or beads in chief value of synthetic resin.

The question of whether or not these bags are composed wholly or in chief value of wood, or in chief value of beads, appears to have been answered by the appellate court in *United States* v. *Veit*, 8 Ct. Cust. Appls. 290, wherein the court stated:

The testimony discloses the fact that both lame or lahn, and bullions, begin their existence in the form of tinsel wire. This is round wire composed principally of copper or brass, and usually coated with a bright metal, such as gold, silver, bronze, or foil. The article in this form is well known under the name of tinsel wire in trade and commerce and also in tariff nomenclature, and is devoted to various distinctive uses.

Lame or lahn is produced by drawing the round tinsel wire through metal rollers, whereby it is flattened into various widths. At the same time it is generally subjected to an ornamental corrugating process, or to a coating or coloring process. When thus flattened and corrugated, or coated or colored, the article no longer bears the name of tinsel wire in trade and commerce or in tariff nomenclature, but is known as lame or lahn.

Bullion is produced by subjecting lame or lahn to a twisting process whereby it is permanently brought to a hollow spiral form. In this form the article no longer bears the name of lame or lahn in trade and commerce or in tariff nomenclature, but passes under the name of bullion only. * * *.

\* \* \* \* \* \* \*

It may be repeated that in some of the trimmings lame or lahn, and in the others bullion, is the component material of chief value, and the first question to decide is whether these materials are "yarns, threads, or filaments" in the contemplation of paragraph 358, supra. * * *.

\* \* \* \* \* \* \*

We are therefore convinced that these terms were intended to cover only such materials as are generally known as materials for knitting, weaving, or sewing, and inasmuch as the present lame or lahn, and bullion, are incapable of such use, the goods of which they compose the chief value do not answer to the qualifications of the paragraph.

It is argued on behalf of the Government that the bullion in these articles is capable of being again permanently straightened, and thus restored to its former status as lame or lahn, and that when thus straightened it might be used as a thread for sewing. *We think it clear, however, that the bullion as a component material must be considered in its condition when it enters into the goods under review*, and the question is whether it is then a yarn, thread, or filament, and not whether it may become such after its name and nature are changed by further processing. United States v. Meadows (2 Ct. Cust. Appls., 143; T. D. 31665); True Fit Waterproof Co. v. United States (7 Ct. Cust. Appls., 489; T. D. 37107). [Italics ours.]

In the case of *Tide Water Oil Co.* v. *United States*, 171 U. S. 210, the Supreme Court of the United States held that:

* * *. Raw materials may be and often are subjected to successive processes of manufacture, each one of which is complete in itself, but several of which may be required to make the final product. Thus, logs are first manufactured into boards, planks, joists, scantlings, etc., and then by entirely different processes are fashioned into boxes, furniture, doors, window sashes, trimmings and the thousand and one articles manufactured wholly or in part of wood. *The steel spring of a watch is made ultimately from iron ore, but by a large number of processes or transformations, each successive step in which is a distinct process of manufacture, and for which the article so manufactured receives a different name.*

The material of which each manufacture is formed, and to which reference is made in section 3019, is not necessarily the original raw material—in this case the tree or log—but the product of a prior manufacture; the finished product of one manufacture thus becoming the material of the next in rank. * * *. [Italics ours.]

Applying to the facts in this case the principles so well stated in the *Veit* and *Tide Water Oil* cases, *supra*, it at once becomes clear that the bags in this case are not made of wood, but are in fact made wholly or in chief value of beads. When the tree or log or wood of which the beads composing the bags in this case had been so far processed or transformed that it was no longer known as a tree or log or wood, but was known as a bead and from that material known as a bead the instant bags were made, the bags were made of beads and not of a log, tree, or wood. Otherwise stated, when the wood was so far processed or transformed that it became the material forming the component of the instant bags, it no longer bore the name of wood in trade and commerce or in tariff nomenclature, but passed under the name of beads only.

As heretofore stated, we need no evidence to show that these bags are composed in chief value of beads. The collector so classified them and there is no evidence before us to overcome the presumption of correctness attaching to such classification. Evidence to the effect that the beads are composed of wood is no evidence that the bags are not composed in chief value of beads.

In the case of *Hirsch* v. *United States*, 4 Ct. Cust. Appls. 82, in holding steel strips plated with nickel dutiable as manufactures of metal, not specially provided for, rather than as strips of steel exceeding 12 inches in length, our appellate court observed:

In answer to the question presented by the record it may be said that although the merchandise was strips of steel in its first estate, it nevertheless became something more than that when it was subsequently plated with nickel. This, of course, was done before importation.

To the same effect was the holding of our appellate court in *Strauss* v. *United States*, 20 C. C. P. A. 378, and *United States* v. *Sutherland*, 21 C. C. P. A. 264. Following the above pronouncements it might well be said that although the merchandise in the instant case was wood in its first estate, it nevertheless became something more than that when it was subsequently converted into beads. This, of course, was done prior to importation.

On the present record we are not here required to decide what would constitute a bag in chief value of wood, not specially provided for, under the provisions of paragraph 411, since the instant merchandise consists of articles in chief value of beads, and does not consist of bags in chief value of wood. In view of the fact that paragraph 411 provides for bags in chief value of wood, not specially provided for, and the instant merchandise consists of articles in chief value of

beads, there is no competition between the said paragraphs 411 and 1503, and consequently no question of relative specificity arises in this case.

To accept the contention made by counsel for the plaintiff would require the insertion in paragraph 411 of the words "beads of," thus making the pertinent part of said paragraph read: "* * * bags * * * wholly or in chief value of beads of wood * * * not specially provided for * * *."

The answer to this contention is that the Congress did not so write the paragraph, and nothing appears herein which would justify us in attempting to so construe it.

We are in hearty accord with the proposition that when the Congress provides for an article by a specific name or designation such a provision must prevail over terms of general description, unless there be a congressional intent to the contrary, but since the instant bags are not provided for either by a specific name or designation or in terms of general description in paragraph 411, this proposition is not before us in this case.

For the reasons herein stated and in line with the authorities quoted and cited, we hold that the bags in chief value of beads in this case were properly classified by the collector under paragraph 1503 of the act of 1930. All claims of the plaintiff are therefore overruled. Judgment will be rendered accordingly.