Entries retained for appeal time.

**VALENTINA, LTD.**

**v.**

**UNITED STATES.**

**C.D. 4046;  Protest 67/22546–30371–66.**

United States Customs Court,
First Division.

July 22, 1970.

Siegel, Mandell & Davidson, New York City (Harvey A. Isaacs, New York City of counsel), for plaintiff.

William D. Ruckelshaus, Asst. Atty. Gen., (Andrew P. Vance and Bernard J. Babb, New York City trial attorneys), for defendant.

Before WATSON, MALETZ, and RE, Judges.

MALETZ, Judge.

This case involves a protest against the assessment of duty on an importation of ladies' spangled sweaters from Hong Kong. The sweaters were assessed by customs at the rate of 25.5 percent ad valorem as articles of spangles not specially provided for under item 741.50 of the Tariff Schedules of the United States (19 U.S.C. § 1202).[1] Plaintiff's claim is that the importations are more properly dutiable under item 772.30 as wearing apparel of plastic at the rate of 12.5 percent ad valorem.[2]

The case has been submitted upon a stipulation in which the parties agree that the merchandise consists of ladies' spangled sweaters; that the sweaters are in chief value of spangles and are used as wearing apparel; and that the spangles are composed wholly of plastic.

Plaintiff argues that based upon this stipulation, the sole issue here is one of relative specificity,[3] and that the claimed provision—item 772.30—is more specific than item 741.50 under which the importations were assessed. In particular, plaintiff's position is that the imported merchandise is described by two competing tariff provisions—i. e., item 741.50 as an article of spangles and item 772.30 as wearing apparel of plastic. The provision for wearing apparel, plaintiff continues, is a use provision and thus prevails over a descriptive or *eo nomine* provision such as item 741.50. E. g., Jack and Jill Togs, Inc. v. United States, 47 CCPA 149, C.A.D. 749 (1960); Drakenfeld & Co. v. United States, 9 Ct.Cust.Appls. 124, T.D. 37979 (1919); Bata Shoe Co., Inc. v. United States, 6 Cust.Ct. 50, C.D. 423 (1941); F. Pavel & Co. v. United States, 8 Cust. Ct. 337, C.D. 633 (1942). Defendant contends, on the other hand, that the importation was correctly classified by customs under item 741.50. Its argument, in essence, is (i) that the importation is not described by item 772.30 as wearing apparel of plastic, but rather is described only by item 741.50 as an article of spangles, and (ii) that the doctrine of relative specificity is therefore inapplicable.

At the outset it will be observed that spangles are complete commercial entities that have an independent existence as an article of commerce apart from the plastic material out of which they are made. This is evidenced by the common meaning of the term "spangle" which has been defined as follows:

Webster's Third New International Dictionary, 1963:

spangle * * * 1: a small disk or other geometric shape of shining metal or plastic used for sparkling ornamentation esp. on dresses and costumes * * *.

Funk & Wagnalls New Standard Dictionary of the English Language, 1956:

spangle, *n*. 1. A small bit (usually circular) of brilliant tin- or metalfoil, with holes for the seamstress's needle: used for decoration in dress, now especially in theatrical costume. * * *

In short, when the plastic material was manufactured into spangles, it was then known in trade and commerce not as plastic but rather as spangles. In this connection, the principle is basic that once a material is so manufactured or processed that it becomes something else that is recognized in the trade and given a specific tariff status by name, the article for tariff purposes is no longer the material that it was prior to

---

1. Tariff Schedules of the United States:
   741.50 Articles not specially provided for of beads, of bugles, of spangles, of imitation gemstones, or of any combination thereof ...........25.5% ad val.

2. Tariff Schedules of the United States:
   772.30 Wearing apparel (including rainwear) not specially provided for, of rubber or plastics ......12.5% ad val.

3. General Interpretative Rule 10(c) of the tariff schedules provides that "an imported article which if described in two or more provisions of the schedules is classifiable in the provision which most specifically describes it * * *."

manufacture or processing. See e. g., Tide Water Oil Company v. United States, 171 U.S. 210, 18 S.Ct. 837, 43 L. Ed. 139 (1898). Applying that principle here, when the plastic material was processed into spangles, the importation was no longer described for tariff purposes under item 772.30 as wearing apparel of plastic but was described under the tariff provision for articles of spangles—i. e., item 741.50.

It will be noted that a similar issue was presented in L. Mendelson Co. v. United States, 9 Cust.Ct. 256, C.D. 704 (1942). There, certain handbags made of beads of wood were assessed under paragraph 1503 of the Tariff Act of 1930 as articles composed wholly or in chief value of beads. They were claimed by the importer to be properly classifiable under paragraph 411 as bags wholly or in chief value of wood. The court upheld the assessment on the basis that when the wood had been manufactured into complete beads, the finished product of that manufacturing process—beads, rather than wood—became the material of which the bags were made. In other words, the wood of which the beads were made, having been manufactured into beads, no longer bore the name of wood in trade or commerce or in tariff nomenclature but passed under the name of beads only. As the court pointed out (9 Cust.Ct. at 260):

> * * * [T]he bags in this case are not made of wood, but are in fact made wholly or in chief value of beads. When the tree or log or wood of which the beads composing the bags in this case had been so far processed or transformed that it was no longer known as a tree or log or wood, but was known as a bead and from that material known as a bead the instant bags were made, the bags were made of beads and not of a log, tree, or wood. Otherwise stated, when the wood was so far processed or transformed that it became the material forming the component of the instant bags, it no longer bore the name of wood in trade and commerce or in tar-

iff nomenclature, but passed under the name of beads only.

* * * * * *

* * * [A]lthough the merchandise in the instant case was wood in its first estate, it nevertheless became something more than that when it was subsequently converted into beads. This, of course, was done prior to importation.

Here, by the same token, when the plastic material was processed into spangles prior to importation, it was no longer known as plastic in trade and commerce or in tariff nomenclature, but became spangles. Thus, it was from spangles—and not plastic—that the imported sweaters were made.

It is to be added that the rationale in *Mendelson* was recently adopted in R. H. Macy & Co., Inc. v. United States, 62 Cust.Ct. 219, C.D. 3733, 297 F.Supp. 171 (1969), aff'd, 57 CCPA, C.A.D. 988 (1970). In that case, certain curtains and panels of man-made fibers, made from materials which were agreed to be plastic in their basic form, were held by the court not to be dutiable as curtains and panels of plastics under item 772.35 of the tariff schedules, as claimed by plaintiff, but were rather found to be dutiable as furnishings under items 365.85 and 367.60, as assessed by the government. Pertinent to our issue is the following statement by the court (62 Cust.Ct. at 230, 297 F.Supp. at 180):

> A yarn which was produced from a basic plastic substance has by that process of manufacture taken on the status of a textile material from which a textile product will be produced, and for tariff purposes may no longer be considered a "plastic" but rather a man-made fiber. (Cf. Tide Water Oil Company v. United States, 171 U.S. 210, 18 S.Ct. 837, and L. Mendelson Co. v. United States, 9 Cust.Ct. 256, C.D. 704). * * *

See also e. g., F. B. Vandegrift & Co., Inc. v. United States, 63 Cust.Ct. 12, C. D. 3866 (1969) (appeal pending); Fujii Shoten v. United States, 17 CCPA 79,

784

T.D. 43362 (1929); Betz v. United States, 26 CCPA 399, C.A.D. 46 (1939).

Plaintiff insists, however, that the present case is controlled by United States v. Marshall Field & Co., 17 CCPA 1, T.D. 43309 (1929). We do not agree. In *Marshall Field*, cotton and silk corsets with lacings made of braid were classified by the government as articles in part of braid under paragraph 1430 of the Tariff Act of 1922. The importer claimed the imports were properly classifiable as wearing apparel in chief value of silk (par. 1210) or cotton (par. 919). The lower court sustained the protest holding that the laces, consisting of a braided material and metal tips, were commercial entities known as laces, separate and different from braid, and were not considered as braid. There being no provision for laces in the Tariff Act of 1922—under which the case arose—the court sustained the protest. The appellate court reversed on the ground that the mere fact that the laces were a separate commercial entity from the braid from which they were made, did not remove the merchandise from classification as articles in part of braid.

The situation in the present case is entirely different. For here not only are spangles separate and distinct from the material from which they are made, there is the further and crucial factor that the term "spangle" has been given specific tariff status under item 741.50. This factor was not present in *Marshall Field* in that (as we have seen) the applicable tariff act contained no provision for laces. In other words, in the *Marshall Field* situation, Congress had not provided for laces as a separate commercial product for tariff purposes—which made it necessary for the court to look to the material out of which the laces were made. Here, on the other hand, Congress has provided specifically for spangles, thus precluding resort to a classification based on the material out of which spangles were made.

We conclude, in summary, that the imported merchandise is not described as wearing apparel of plastic within the meaning of item 772.30 and that the doctrine of relative specificity is therefore inapplicable. Accordingly, we hold that the importation was correctly classified under item 741.50 as articles of spangles.

The protest is overruled. Judgment will be entered to that effect.