(C.D. 4180)

Venetianaire Corp. of America v. United States

126

United States Customs Court, First Division

(Decided February 23, 1971)

*Sharretts, Paley, Carter & Blauvelt* (*Charles P. Deem* of counsel) for the plaintiff.

*L. Patrick Gray, III*, Assistant Attorney General (*Velta A. Melnbrencis*, trial attorney), for the defendant.

Before WATSON, MALETZ, and RE, Judges

MALETZ, Judge: These two protests which were consolidated for trial involve the proper tariff classification of articles invoiced as "plastic bead window curtains" that were imported from Hong Kong through the port of New York in 1967. The importations were classified by customs under item 741.50 of the tariff schedules as articles, not specially provided for, of beads, and assessed with duty at the rate of 25.5 percent.[1]

Plaintiff protests and claims that the importations are properly classifiable under item 772.35 as curtains or drapes or like furnishings of plastic, dutiable at only 12.5 percent.[2]

The parties have stipulated that the imports are in chief value of beads, composed wholly of plastic. Those of the imports that are involved in the first protest are described in the accompanying commercial papers as 36", 72" and 78" plastic bead window curtains

---

[1] Item 741.50    Articles not specially provided for, of beads, of bugles, of spangles, of imitation gemstones, or of any combination thereof_____ 25.5% ad val.

[2] Item 772.35    Curtains and drapes, including panels and valances; napkins, table covers, mats, scarves, runners, doilies, centerpieces, antimacassars, and furniture slipcovers; and like furnishings; all the foregoing of rubber or plastics_____ 12.5% ad val.

consisting of 12 strands per package for the 36″ and 72″ items and of 20 strands per package for the 78″ size item. And the imports involved in the second protest are described in the commercial papers as 78″ and 94″ plastic bead window curtains consisting of 12 strands per package for the 78″ size and 20 strands per package for the 94″ size.

One witness testified at trial—plaintiff's vice president who was in charge of purchasing and importing the articles merchandised by plaintiff, and who was also active in the sale and distribution of such articles. He testified that plaintiff's business consisted primarily of importing and wholesaling window coverings; and that he had purchased the imported items in question in Hong Kong and had assisted in their design. In designing the items, the witness said, he worked with plaintiff's agents and manufacturers in Hong Kong in coming up with an acceptable pattern and had the items made in standard curtain and drapery, door, and room divider sizes, which sizes range from 24 to 94 inches in length. He testified that the item consisting of 36″ strands of beads was designed to be used as a window curtain. The strands, he stated, are attached to plastic clamps which were included in the imported package and are then hung from a curtain rod, as shown in an instruction sheet which was also included in the package.

He testified that the item consisting of 78″ strands of beads, 20 strands to a package, was designed for use in a doorway. Each package, he indicated, came with two 16-inch plastic tracks which are affixed to the jamb of the door and from which are hung the individual strands of beads, spaced any way the user wants. Additionally, he testified that the item consisting of 94″ strands of beads was designed for use as a room divider, for decorative purposes, or "to hide something." It is affixed to the ceiling in the same manner as the 78″ size.

The imported articles, he continued, were sold to Montgomery Ward, Spiegel's and J. C. Penney Company, as well as to smaller department stores and curtain and drapery shops. The witness has used them in his own home as window curtains, and has seen them used in friends' homes as room dividers; as window coverings; in doorways; and in conjunction with shower curtains for decorative purposes.

Turning now to the legal phase, it is to be noted that beads not only are given a specific tariff status by name, they are complete commercial entities that have an independent existence as an article of commerce apart from the plastic material out of which they are made. This is evidenced by the common meaning of the term "bead" which has been defined as follows:

*Funk & Wagnalls New Standard Dictionary*, p. 243 (1956):

A little perforated sphere, ball, cylinder, or the like, usually strung on a thread or attached to a fabric for decoration.* * *

*Webster's Third New International Dictionary*, p. 190 (1963):

A small often round piece of stone, glass, shell, wood, metal, or other material that is pierced for threading on a string of wire.* * *

Dispositive in this context is *Valentina, Ltd.* v. *United States*, 65 Cust. Ct. 19, C.D. 4046, 314 F. Supp. 781 (1970), *reh. den.* Sept. 10, 1970. In that case, imported ladies' sweaters decorated with plastic spangles were classified by the government under item 741.50 as articles of spangles. Plaintiff claimed they were properly classifiable under item 772.30 as wearing apparel of plastic. The court sustained the government's classification, holding that sweaters were not wearing apparel of plastic for tariff purposes on the ground that when the plastic material was processed into spangles prior to importation, it was no longer known as plastic in trade and commerce or in tariff nomenclature, but became spangles. Thus it was from spangles—and not plastic—that the imported sweaters were made. See also *L. Mendelson Co.* v. *United States*, 9 Cust. Ct. 256, C.D. 704 (1942; *R. H. Macy & Co., Inc.* v. *United States*, 62 Cust. Ct. 219, 230, C.D. 3733, 297 F. Supp. 171, 180 (1969), *aff'd* 57 CCPA 115, C.A.D. 988 (1970).

In the present case, similarly—to paraphrase what we said in *Valentina* (65 Cust. Ct. at 21, 314 F. Supp. at 782–83) ; "[W]hen the plastic material was manufactured into * * * [beads], it was then known in trade and commerce not as plastic but rather as * * * [beads]. In this connection, the principle is basic that once a material is so manufactured or processed that it becomes something else that is recognized in the trade and given a specific tariff status by name, the article for tariff purposes is no longer the material that it was prior to manufacture or processing.* * * Applying that principle here, when the plastic material was processed into * * * [beads], the importation was no longer described for tariff purposes under * * * [item 772.35 as curtains and drapes, and like furnishings, *of plastics*] but was described under the tariff provision for articles of * * * [beads—i.e., item 772.35]."

We conclude, in short, that the importations were correctly classified by customs under item 741.50 as articles of beads. The protests are overruled and judgment will be entered accordingly.