**UNITED MERCHANTS, INC.,**
**Plaintiff,**

**v.**

**UNITED STATES, Defendant.**

**C. D. 4307; No. 70/29939–6622–70.**

United States Customs Court.

Dec. 21, 1971.

See also Cust.Ct., 328 F.Supp. 1403.

Sharretts, Paley, Carter & Blauvelt, New York City (Eugene F. Blauvelt, Donald W. Paley and Gail T. Cumins, New York City, of counsel), Lane, Young & Fox, Rode & Qualey, and Siegel, Mandell & Davidson, New York City, associate counsel, for plaintiff.

L. Patrick Gray, III, Asst. Atty. Gen. (Bernard J. Babb, New York City, trial attorney), for defendant.

RAO, Judge:

The merchandise involved in this case consists of panels, a form of curtain, composed in chief value of polyester fabric which was woven from a polyester yarn spun from man-made fibers of polyester.

It was assessed with duty at 24½ per centum ad valorem plus 25 cents per pound under item 367.60, Tariff Schedules of the United States, as modified, as furnishings of textile materials, not ornamented, of man-made fibers, not knit, nor of pile construction, nor of glass.

It is claimed in the complaint that the imported panels are properly dutiable at 10 per centum ad valorem under item 772.35 of said tariff schedules, as curtains and drapes, including panels, of rubber or plastics, or, in the alternative, at 14 per centum ad valorem under item 367.65, as furnishings of textile materials, not ornamented: Other.

The pertinent provisions of the tariff schedules, as modified, are as follows:

SCHEDULE 3.—TEXTILE FIBERS AND
TEXTILE PRODUCTS

Schedule 3 headnotes:

\* \* \* \* \* \*

2. For the purposes of the tariff schedules—

(a) the term *"textile materials"* means—

(i) the fibers (cotton, other vegetable fibers, wool and hair, silk, and man-made fibers) provided for in part 1 of this schedule,

(ii) the yarn intermediates and the yarns provided for in part 1 and part 4 (elastic yarns) of this schedule,

(iii) the cordage provided for in part 2 and part 4 (elastic cordage) of this schedule,

(iv) the fabrics provided for in part 3 and part 4 of this schedule,

(v) braids, as defined in headnote 2(f), *infra,* and

(vi) except as provided by headnote 5, articles produced from any of the foregoing products;

\* \* \* \* \* \*

## PART 1.—TEXTILE FIBERS AND WASTES; YARNS AND THREADS

\* \* \* \* \* \*

### Subpart E.—Man-Made Fibers

Subpart E headnotes:

\* \* \* \* \* \*

2. (a) For the purposes of the tariff schedules, the term *"man-made fibers"* refers to the filaments, strips, and fibers covered in this subpart.

\* \* \* \* \* \*

## PART 5.—TEXTILE FURNISHINGS

\* \* \* \* \* \*

### Subpart C.—Tapestries, Linens, and Other Furnishings

Subpart C headnotes:

1. For the purposes of this subpart, the term *"furnishings"* means curtains and drapes, including panels and valances; towels, napkins, tablecloths, mats, scarves, runners, doilies, centerpieces, antimacassars, and furniture slipcovers; and like furnishings; all the foregoing, of textile materials, and not specially provided for.

\* \* \* \* \* \*

Other furnishings, not ornamented:
  Of vegetable fibers:

\* \* \* \* \* \*

  Of wool:

\* \* \* \* \* \*

  Of silk:

\* \* \* \* \* \*

  Of man-made fibers:

| | | |
|---|---|---|
| \* \* \* | Knit (except pile or tufted construction) .. | \* \* \* |
| \* \* \* | Pile or tufted construction .............. | \* \* \* |
| | Other: | |
| \* \* \* |   Of glass ........................... | \* \* \* |
| 367.60 |   Other ............................. | 25¢ per lb. + 24.5% ad val. |
| 367.65 | Other ................................ | 14% ad val. |

## SCHEDULE 7.—SPECIFIED PRODUCTS; MISCELLANEOUS AND NONENUMERATED PRODUCTS

\* \* \* \* \* \*

PART 12.—RUBBER AND PLASTIC
PRODUCTS

\* \* \* \* \* \*

Subpart C.—Specified Rubber and Plastics
Products

\* \* \* \* \* \*

772.35    Curtains and drapes, including panels and
valances; napkins, table covers, mats,
scarves, runners, doilies, centerpieces, anti-
macassars, and furniture slipcovers; and
like furnishings; all the foregoing of rubber
or plastics .......................... 10% ad val.

———◆———

This case was submitted on the pleadings, a sample of the merchandise, and the record in R. H. Macy & Co., Inc. v. United States, 57 CCPA 115, C.A.D. 988, 428 F.2d 856 (1970). After briefs were filed, oral argument was permitted at the request of plaintiff.

In the *Macy* case it was held that curtains and drapes of polyester fabric were classifiable under the textile schedule and not under item 772.35, as curtains and drapes, including panels, of rubber or plastics, on the ground that the latter covered only curtains and drapes in non-woven form such as a sheet form. In the course of the opinion the court stated (p. 118, 428 F.2d p. 858):

> The court below concluded from this passage that there was a distinction to be drawn between products of man-made fibers, which were to be classified under the textile schedule *even if* the fibers were of rubber or plastic, and "other articles of rubber or plastics," which would be classified under part 12 of schedule 7. The court concluded:

> We are inclined to the view that the term "plastic" as employed in part 12 of schedule 7 describes a form as well as a substance, and does not cover plastic materials which have been converted into textile materials.

> A yarn which was produced from a basic plastic substance has by that process of manufacture taken on the status of a textile material from which a textile product will be produced, and for tariff purposes may no longer be considered a "plastic" but rather a man-made fiber.

\* \* \* As mentioned above, head-note 1 to part 12 of schedule 7 states that the term "plastics" refers to "synthetic plastics materials" as defined in schedule 4. The definition in this headnote is silent as to form, and it is not at all clear that Congress intended to cover all forms, including the fiber and yarn forms from which the merchandise here involved was made. In fact, headnote 3 to schedule 4, part 1, subpart C, and headnote 2 to schedule 4, part 4, subpart A, lead us to the conclusion that not all forms of plastics were to be covered by part 12 of schedule 7. Those headnotes respectively provide:

> The plastic materials may be in solid, semi-solid, or liquid condition, such as flakes, powders, pellets, granules, solutions, emulsions, and other basic *forms not further processed.* \* \* \*

> These synthetic plastics materials may be in a solid, semi-solid, or liquid condition such as flakes, powders, pellets, granules, solutions, emulsions, and other basic crude *forms not further processed.* \* \*

By contrast, schedule 3 is not silent on form. Headnote 2 to that schedule expressly provides that the term "tex-

tile materials" includes man-made materials in fiber form. We think the Customs Court was correct in considering all the relevant headnotes and extrinsic sources to determine Congressional intent, and that it has not applied a definition of "plastics" contrary to the statutory definition. [Emphasis quoted.]

The court held, therefore, that the curtains and panels were not "of rubber or plastics", but rather "of man-made fibers".

Neither in its brief nor in oral argument has plaintiff pressed its claim for classification under item 772.35, in view of the decision of our appellate court in the *Macy* case. That case is controlling as to plaintiff's first claim, which, therefore, will not be discussed further.

Plaintiff claims in addition, on the basis of the reasoning in the *Macy* case, that, if a plastic material which has been made into a man-made fiber is no longer a plastic material under item 772.35, then a curtain composed of a cloth, woven from a yarn, which has been spun from a man-made fiber, is not a curtain of man-made fiber, but a curtain of fabric, and is classifiable under item 367.65, *supra*, rather than under item 367.60, *supra*.

In support of its argument, plaintiff relies upon Valentina, Ltd. v. United States, 65 Cust.Ct. 19, C.D. 4046, 314 F.Supp. 781 (1970), rehearing denied September 10, 1970, and Venetianaire Corp. of America v. United States, 66 Cust.Ct. 125, C.D. 4180 (1971).

In the *Valentina* case, ladies' sweaters decorated with and in chief value of plastic spangles were classified as articles of spangles and were claimed to be dutiable as wearing apparel of plastic. The court noted that spangles were a complete article of commerce apart from the plastic material of which they were made and were known in trade and commerce as spangles and not as plastic. It referred to the principle that once a material is so manufactured that it becomes something else that is so recognized by the trade and given a specific tariff status by name, the article is no longer considered for tariff purposes the material it was prior to manufacture, and held that when plastic material was processed into spangles, the imported sweaters made therewith did not fall within the tariff description, wearing apparel of plastic, but within the provision for articles of spangles.

Following the same line of reasoning, the court, in the *Venetianaire* case, held that window curtains in chief value of beads composed of plastic were not classifiable as curtains of plastic but as articles of beads.

Defendant contends that these cases stand for the proposition that where there are two provisions which describe the merchandise, one of which requires a component material of chief value which is a basic substance and the other of which prescribes a component material of chief value which has been advanced from that basic substance, the merchandise is dutiable as an article composed of the advanced material. Thus, a curtain of woven plastic materials is not dutiable as a curtain of plastic since the plastic has been manufactured or manipulated and has become a filament, which is spun into yarn and woven into fabric. It is no longer a curtain of plastic but is one of textile materials.

Defendant claims, however, that this line of reasoning cannot be carried a step further in the instant case on the ground that, although there is a provision for furnishings of man-made fibers, that is, a material advanced from the first step, plastic, there is none for the next stage, that is, furnishings of yarns of man-made fibers or of fabric of man-made fibers. It concludes, therefore, that Congress did not intend to limit the provision for furnishings of man-made fibers to those made directly from filaments, strips or fibers, but to include articles made from filaments, strips or fibers, which were spun into yarns and woven into fabrics.

Plaintiff contends that there is such a specific provision, in that item 367.65 which covers other furnishings, not ornamented; other than of vegetable fibers, wool, silk, or man-made fibers, is equivalent to a specific provision for furnishings of fabrics or of yarns, on the principle that where a general class of articles is named in the tariff law without specifying each article coming within the class, each of said articles is regarded as enumerated as clearly as if the names of each had been given, citing United States v. Sears, Roebuck & Co., 20 CCPA 295, 301, T.D. 46086 (1932), cert. denied 290 U.S. 633, 54 S.Ct. 51, 78 L.Ed. 551 (1933), and Package Machinery Co. v. United States, 41 CCPA 63, C.A.D. 530 (1953).

In the *Sears, Roebuck* case, it was held that the President might under the powers delegated to him by section 336 of the Tariff Act of 1930 increase or decrease duties on any article falling within paragraph 397 to the same extent as if the article had been *eo nomine* designated therein. The *Package Machinery* case held that where an article is fairly included within any of the enumerating clauses of the tariff act, resort cannot be had to the nonenumerated clause. Nor may resort be had to the similitude clause. Mason v. Robertson, 139 U.S. 624, 11 S.Ct. 668, 351 L.Ed. 293 (1891); Arthur v. Butterfield, 125 U.S. 70, 8 S.Ct. 714, 31 L.Ed. 643 (1888).

The principle, however, cannot be given universal application. For instance, it is well settled that in the absence of a contrary legislative intent, words of general description will not prevail over an *eo nomine* or a use provision. United States v. Astra Trading Corp., 44 CCPA 8, C.A.D. 627 (1956); United States v. Henry Greenberg & Bros. Export & Import Co., Inc., 44 CCPA 48, C.A.D. 636 (1957). For this purpose, a general description cannot be considered as if it were a list of specific enumerations.

In the instant case, the legislative intent appears to be contrary to the construction contended for by plaintiff.

■■ The polestar of statutory construction is the intent of Congress and rules of construction must yield if the legislative intent is shown to be contrary. S. Schwabacher & Co., Inc. v. United States, 22 CCPA 496, T.D. 47484 (1935); United States v. The Best Foods, Inc., 47 CCPA 163, C.A.D. 751 (1960); United States v. Clay Adams Co., Inc., 20 CCPA 285, T.D. 46078 (1932); United States v. Damrak Trading Co., Inc., 43 CCPA 77, C.A.D. 611 (1956). Such intent is to be determined primarily from the language of the statute and the context in which the words are used. United States v. British Cars & Parts, Inc., et al., 47 CCPA 114, C.A.D. 741 (1960); James v. United States, 48 CCPA 75, C.A.D. 768 (1961); United States v. Gulf Oil Corporation et al., 47 CCPA 32, C.A.D. 725 (1959).

■ An examination of the portion of schedule 3, part 5C, in which the items here under consideration appear, discloses that under the superior heading "Other furnishings, not ornamented", there are inferior headings "Of vegetable fibers", "Of wool", "Of silk", and "Of man-made fibers", prior to the catchall provision "Other" in item 367.65. Beneath these are provisions for specific articles, such as curtains and drapes, towels, tablecloths, and napkins. This pattern appears throughout the portions of the textile schedule which cover woven fabrics, fabrics of special construction, textile furnishings, wearing apparel, and other textile products. It is obvious that many, if not most, of the articles specifically mentioned are made of yarns or of fabrics made of yarns, and are not manufactured directly from vegetable fibers, man-made fibers, or the fibers of cotton, wool, or silk. To accept plaintiff's argument would logically result in placing such articles under basket clauses contrary to the intent of the tariff schedules. Tariff Classification Study Submitting Report, p. 15; Laurence Myers Scaffolding Co. v. United States, 57 Cust. Ct. 333, 338, C.D. 2809, 259 F.Supp. 874 (1966), appeal dismissed 56 CCPA 133 (1967). It is manifest that in using

the terms vegetable fibers, wool, silk, and man-made fibers in co-ordinate inferior headings, Congress was referring to a basic material, whether in fiber form or further processed into yarn or woven into fabric, and intended to include the articles enumerated thereunder when "of" that basic material, whether or not processed. Cf. Kayser & Co. (Inc.) v. United States, 13 Ct.Cust.Appls. 474, T. D. 41367 (1926). That case arose under the Tariff Act of 1922 and the issue was whether cotton fabric gloves were classifiable as embroidered articles under a provision covering embroidered fabrics and articles when composed wholly or in chief value of yarns, threads, and filaments. The court held that they were, stating (p. 478):

> Importer asserts that the yarns, threads, and filaments used to manufacture the fabric lost their identity after the weaving process was complete, and that as the gloves are in chief value of *cotton cloth* and not composed wholly or in chief value of yarns, threads, or filaments they are not *fabrics* and articles embroidered within the meaning of paragraph 1430. The fabric of the gloves is composed wholly of yarns, threads, or filaments, and to give to the paragraph the interpretation claimed by the importer would result in an absurdity which we can not attribute to Congress.

> The statute unmistakably refers to the basic material of which the embroidered article is composed. The gloves are made of cotton cloth; nevertheless it may be said with entire truth that they are composed of cotton yarns, threads, and filaments. Certainly the yarns, threads, and filaments have been processed by weaving; but as they have not been destroyed to the extent that they are no longer identifiable, at least as filaments, the gloves made of the woven fabric are within the meaning of the paragraph. * * * (Emphasis quoted.)

Plaintiff conceded in its brief that the terms, cotton, wool, silk, and vegetable fibers, include every form that the fibers assume in the articles manufactured therefrom, but claims a distinction as to man-made fibers on the ground of their definition as filaments, strips, and fibers in schedule 3, subpart 1E. Such a construction would lead to an absurdity in that, for example, curtains composed of cloth made of yarn spun from vegetable fibers would be classifiable as curtains of vegetable fibers but curtains composed of cloth made of yarn spun from man-made fibers would not be classed as curtains of man-made fibers but would be relegated to a residual provision "other". Such a result is not in accord with a harmonious or common-sense reading of the statutory scheme and cannot be attributed to Congress.

I conclude that the merchandise involved herein was properly classified as curtains of man-made fibers.

For the reasons stated, the claims in the complaint are overruled. Judgment will be entered accordingly.